**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GERALD COTTON,<br>Plaintiff<br><br>v.<br><br>SHRINERS HOSPITAL FOR CHILDREN, CHICAGO,<br>Defendant | No. 26 CV 4719<br><br>Judge Jeremy C. Daniel |

**ORDER**

The defendant's motion to dismiss [13] is denied as to Counts I, VII, and VIII and granted as to Counts II–VI and IX. Counts II–V are dismissed without prejudice. Counts VI and IX are dismissed with prejudice. The defendant shall file its answer on or before October 23, 2026. The October 6, 2026, status hearing is stricken.

**STATEMENT**

**<u>Background and Legal Standard</u>**

The following description of events underlying these claims is drawn from the complaint and presumed true for the purpose of resolving this motion. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). Plaintiff Gerald Cotton is a Black man who was hired by Defendant Shriners Hospital for Children ("Shriners") as an "Orthopedic Technologist" in August or October 2017. (R. 4 ¶¶ 1, 24, 28.)[1] Cotton had a national board certification that Shriners required for this position. (*Id.* ¶¶ 26, 31.) Shriners required him to maintain this certification and incur the associated costs throughout his employment. (*Id.* ¶¶ 30–31.) Cotton's daily uniform was a lab coat with a badge displaying his name and the title "Orthopedic Technologist." (*Id.* ¶ 29.) After eight years, Cotton discovered that Shriners had categorized him as a "Cast Technician," which is compensated on a lower wage scale than an Orthopedic Technologist. (*Id.* ¶¶ 33, 131.) Cotton alleges that other similarly situated non-Black employees hired as Cast Technicians were paid on the same scale as him but were less qualified and were not required to maintain the same board certification as him. (*Id.* ¶¶ 33–34.)

[1] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

Cotton asked Shriners to reclassify his job to Orthopedic Technologist and pay him accordingly. (*Id.* ¶ 36.) In a June 2025 meeting, Shriners' Director of Human Resources informed Cotton that he no longer needed the certification and added, "God came down from heaven and gave us Gerald, . . . you are just a cast tech and nothing but a cast tech. That's all you are and that's all you're worth." (*Id.* ¶¶ 4, 37.) Shriners then asked Cotton to sign off on a change of his job description to "cast tech," a request that Cotton refused. (*Id.* ¶ 38.) Meanwhile, Shriners continued to direct Cotton to perform the duties of an Orthopedic Technologist. (*Id.* ¶¶ 39–40.) Shriners continued to hire more non-Black and non-certified employees as Cast Technicians. (*Id.* ¶¶ 42–43.)

In August 2025, Cotton offered a safety recommendation to the Director of the Outpatient Clinic at Shriners, who advised that "she did not want to hear any more about safety protocol pertaining to patient stickers . . . identification" and that "the other non-Black Americans follow Director instructions." (*Id.* ¶ 44.) Two months later, when a non-Black Cast Technician provided the same idea, the Director was more receptive. (*Id.*) In February 2026, Cotton took sick leave. (*Id.* ¶ 45.) When he returned, he was required to present a doctor's note to the Human Resources Director, even though the prior protocol had been to take the note to Health Services. (*Id.*) Cotton resigned on March 6, 2026 because he felt he was being harassed and discriminated against. (*Id.* ¶¶ 46, 97–98.)

Cotton now brings claims for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*[2] (Counts I–III); the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 *et seq.*; and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.* (Count VII). (R. 4 ¶ 48.) He also brings claims for breach of contract (Count IV), fraudulent misrepresentation (Count V), negligent misrepresentation (Count VI), promissory estoppel (Count VIII), and breach of the implied covenant of good faith and fair dealing (Count IX). (*Id.*) Shriners moves to dismiss the entire complaint under Federal Rule of Civil Procedure 8(a)(2) and separately moves to dismiss Counts I–VI and IX for failure to state a claim. Fed. R. Civ. P. 12(b)(6); (*see generally* R. 14.)

A Rule 12(b)(6) motion tests whether the plaintiff has provided "enough factual information to state a claim to relief that is plausible on its face" and has raised "a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). In deciding a Rule 12(b)(6) motion, the Court accepts as true all well-pled factual allegations and draws all reasonable inferences

[2] The complaint also refers to the Equal Employment Act of 1972 (EEOA), 42 U.S.C. § 2000e-2 (*amended by* Equal Employment Opportunity Act of 1972, Pub. L. No. 92-261, § 2, 86 Stat. 103), which amended Title VII and provided a cause of action through the latter; it does not constitute an independent cause of action on its own behalf.

in favor of the non-moving party. *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). Dismissal is proper where "the allegations . . . , however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

## Analysis

### Rule 8

Shriners first moves to dismiss the complaint in its entirety because it fails to comply with Rule 8's requirement of a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

The primary purpose of Rule 8 is to "give defendants fair notice of the claims against them and the grounds supporting the claims." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013) (quoting *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011)). "[L]ength alone is generally insufficient to justify rejecting a complaint" under Rule 8, but "unintelligibility is certainly a legitimate reason for doing so." *Stanard*, 658 F.3d at 797. A complaint is unintelligible if "neither the adverse party nor the court can make out the essence of the claims." *Beyrer*, 722 F.3d at 946–47 (7th Cir. 2013) (citing *United States ex rel. Garst v. Lockheed–Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)). "That being said, '[a] district court is not authorized to dismiss a complaint merely because it contains repetitious and irrelevant matter.'" *Id.*

Shriners argues that the complaint is "repetitive, meandering and disorganized" and fails to provide Shriners with fair notice of the claims against it. (R. 14 at 5.) As evidence, Shriners points out that the complaint asserts nine counts across fifty-four pages and often reincorporates the first forty-eight paragraphs by reference. (R. 14 at 5.) Shriners also contends that the complaint raises claims that are not appropriately brought as separate counts and, in some places, asserts the same allegations using different phrasing. (R. 14 at 5.)

Cotton acknowledges the complaint's length but argues that it satisfies Rule 8 by identifying the factual basis for each claim, specifically:

> Defendant hired Plaintiff as an Orthopedic Technologist; required him to obtain and maintain national board certification; Plaintiff performed the duties associated with that position for more than eight years; Defendant nevertheless classified and compensated him as a Cast Technician; similarly situated non-Black employees allegedly were not subjected to the same certification requirement; Plaintiff challenged the disparate treatment; and Defendant thereafter subjected Plaintiff to retaliatory conduct that culminated in his constructive discharge.

(R. 17 at 5.)

The complaint does not violate Rule 8. Regardless of its length, dismissal is only appropriate if the complaint is unintelligible. *Stanard*, 658 F.3d at 797. Although many parts of it are vague, repetitive, and grammatically incorrect, the complaint lays out the basic narrative underpinning Cotton's allegations. Some of these allegations may fail to state a claim for other reasons, which the Court addresses below, but the complaint is not "too confusing to determine the facts that constitute the alleged wrongful conduct." *Id.* at 798. Because the Court does not find the complaint unintelligible, it declines to dismiss the complaint for violating Rule 8.

<u>Count I: Discrimination Under Title VII</u>

To state a claim for discrimination, a Title VII plaintiff must show "some harm respecting an identifiable term or condition of employment." *Muldrow v. St. Louis*, 601 U.S. 346, 355 (2024). A plaintiff need not make out a prima facie case of employment discrimination to survive a motion to dismiss. *Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1338 (7th Cir. 2024) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)). Instead, "'I was turned down for a job because of my race' is all a complaint has to say." *Thomas*, 120 F.4th at 1337 (quoted source omitted).

Shriners argues that Count I should be dismissed because Cotton "fails to plead that he suffered any adverse action as a result of Defendant's alleged discriminatory treatment of him." (R. 14 at 2.) However, the complaint alleges that Shriners required Cotton to obtain and maintain the board certification of an Orthopedic Technologist, which it did not require of non-Black employees performing a similar role and receiving similar wages to Cotton. (R. 17 at 5; R. 4 at ¶¶ 60–61.) Accepting these allegations as true, the complaint alleges "some harm respecting an identifiable term or condition of employment." *Muldrow*, 601 U.S. at 355. That is all that is required to plead discrimination under Title VII.

<u>Count II: Retaliation Under Title VII</u>

To plead retaliation under Title VII, a plaintiff must "'allege that [he] engaged in statutorily protected activity and was subjected to an adverse employment action as a result.'" *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014) (quoted source omitted). Filing a complaint with an employer may constitute protected activity under Title VII, but "the complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006).

Shriners argues that Cotton "fails to allege that he engaged in any activity protected under Title VII." (R. 14 at 2.) Cotton responds that his request to be reclassified as an Orthopedic Technologist was protected activity because, "[i]n context," he was not

only asking for a different job title, but also "objecting to Shriners' imposition of an unequal qualification burden on him while treating similarly situated non-Black employees more favorably." (R. 4 ¶ 77; R. 17 at 6.)

The problem with Cotton's purported objection to unequal treatment is that it does not appear in the complaint. Instead, the complaint only alleges that he requested a job reclassification. If he did not mention any alleged discrimination to his employer, "a claim of retaliation is not implicated, for an employer cannot retaliate when it is unaware of any complaints." *Miller v. Am. Fam. Mut. Ins. Co.*, 203 F.3d 997, 1008 (7th Cir. 2000). Because Cotton fails to plead that he engaged in protected activity, the Court does not reach the remaining elements of Cotton's retaliation claim. Count II is dismissed without prejudice.

Count III: Constructive Discharge

To state a claim for constructive discharge, a plaintiff must plausibly allege: (1) "that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign"; and (2) "that he actually resigned." *Green v. Brennan*, 578 U.S. 547, 555 (2016) (citing *Pennsylvania State Police v. Suders*, 542 U.S. 129, 148 (2004)).

Shriners argues that Count III should be dismissed because constructive discharge is not an independent cause of action. (R. 14 at 6.) This argument appears to be based on a concurrence from *Green v. Brennan*—not the majority opinion, in which the Supreme Court reiterated its prior holding that "constructive discharge is a claim distinct from the underlying discriminatory act." 578 U.S. at 559 (citing *Suders*, 542 U.S. at 149). Nonetheless, Cotton agrees that constructive discharge is not an independent cause of action and consents to its dismissal. (R. 17 at 7.) Because the parties agree, Count III is dismissed without prejudice.

Count IV: Breach of Contract

To state a claim for breach of contract, a plaintiff must plead "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015) (citing *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. Ct. 2004)). "To be enforceable, an oral contract must contain terms which are definite and certain." *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996). "[U]nder Illinois law, oral employment contracts are viewed more skeptically than written ones." *Id.* (citation omitted).

Shriners argues that the complaint fails to allege the existence of a valid and enforceable contract with definite and certain terms. (R. 14 at 10–11.) Cotton responds that the allegations in the complaint meet the plausibility pleading

standard and argues discovery will reveal additional details about "the wage scales, the identity of the hiring manager, and the precise communications." (R. 17 at 10.) The complaint does not plead a written contract, so the inquiry is whether it pleads an oral contract with definite and certain terms. *Zemke*, 100 F.3d at 513.

The Court agrees with Shriners. According to the complaint, a contract was formed when Shriners hired Cotton, with terms that Cotton "would hold the position of Orthopedic Technologist, would be required to obtain and maintain national board certification, and would be compensated at the wage scale applicable to Orthopedic Technologists." (R. 4 ¶¶ 106–07.) These terms are neither definite nor certain. As a practical matter, they make it impossible to evaluate the remaining elements of the plaintiff's claim for breach of contract. For example, the complaint is devoid of any description of Cotton's term of employment or job responsibilities, which are a predicate to determining whether he performed the alleged contract. Nor are the terms definite enough to evaluate whether Shriners breached them, or whether it has any defenses to its alleged breach. Because the Court finds that the complaint fails to plead the existence of a valid contract with definite terms, it does not reach the remaining elements of the plaintiff's claim for breach of contract. Count IV is dismissed without prejudice.

Count V: Fraudulent Misrepresentation

"To state a cause of action for common-law fraud, a plaintiff must plead (1) a false statement of material fact; (2) knowledge or belief by the maker that the statement was false; (3) an intention to induce the plaintiff to act; (4) reasonable reliance upon the truth of the statement by the plaintiff; and (5) damage to the plaintiff resulting from this reliance." *Lagen v. Balcor Co.*, 653 N.E.2d 968, 972 (Ill. App. Ct. 1995) (citation omitted). Fraud claims are also subject to the heightened pleading standards of Rule 9(b), which require a plaintiff to "state with particularity the circumstances constituting fraud" by describing "the who, what, when, where, and how of the fraud." Fed. R. Civ. P. 9(b); *Camasta*, 761 F.3d at 737.

Shriners points out that the complaint does not identify the person who allegedly made the false statement or the context in which they did so. (R. 14 at 12.) Without this information, Shriners argues that it lacks notice of the basis for Cotton's claim. (*Id.*) Cotton responds that this information "is contained in Shriners' hiring and personnel records." (R. 17 at 11.) According to Cotton, the complaint meets the pleading standard because it identifies the "substance, approximate time, location, and alleged method of the representation." (R. 17 at 11.)

Cotton's claim lacks the detail required by Rule 9(b). As the defendant points out, the complaint only alleges that an unidentified person at Shriners conveyed to Cotton that he was being hired as an Orthopedic Technologist. (R. 22 at 5.) No additional context is provided. The timeline is also murky: Cotton contends that the false

statement was made "during Shriners' hiring process in or about August 2017 at its Chicago facility." (R. 17 at 11.) But this is contradicted by a different part of the complaint which alleges October 2017 was the beginning of Cotton's employment. (R. 4 ¶ 28.)

At a minimum, the complaint does not provide enough detail about the "who," "when," or "how" aspects of the alleged misrepresentation. While it may be true that Shriners can search its records for this information, that does not relieve Cotton of his obligation to provide the particularity required by Rule 9(b), one of the purposes of which is "to force the plaintiff to do more than the usual investigation before filing his complaint." *Camasta*, 761 F.3d at 737 (quoted source omitted). Without more particularity, the plaintiff's claim for fraudulent misrepresentation does not satisfy Rule 9(b). Count V is dismissed without prejudice.

Count VI: Negligent Misrepresentation

Shriners argues that Cotton's claim for negligent misrepresentation should be dismissed because the complaint does not plead any duty that the defendant breached. (R. 14 at 13.) Cotton agrees, and further highlights that Illinois bars the recovery of purely economic losses through a negligence claim, subject to limited exceptions that do not apply here. (R. 17 at 12 (citing *First Midwest Bank, N.A. v. Stewart Title Guaranty Co.*, 843 N.E.2d 327, 332–34 (Ill. 2006).) Accordingly, Count VI is dismissed with prejudice.

Count IX: Implied Covenant of Good Faith and Fair Dealing

Shriners points out (R. 14 at 14), and Cotton acknowledges (R. 17 at 14), that the Illinois Supreme Court has "expressly declined to recognize" an independent cause of action for breach of the implied covenant of good faith and fair dealing. *Ross Advert., Inc. v. Heartland Bank & Tr. Co.*, 969 N.E.2d 966, 979 (Ill. App. Ct. 2012) (citing *Voyles v. Sandia Mortgage Corp.*, 751 N.E.2d 1126, 1130 (Ill. 2001)). Accordingly, Count IX is dismissed with prejudice.

Date: October 5, 2026

JEREMY C. DANIEL
United States District Judge